WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio Mendez, | No. CV-12-0271-PHX-RCB (MHB) |
| Plaintiff, | **O R D E R** |
| v. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Sergio Mendez, who is a prisoner in the custody of the Arizona Department of Corrections (ADC) at the maximum-custody Browning Unit in Florence, Arizona, brought this civil rights case pursuant to 42 U.S.C. § 1983 against various ADC employees regarding his classification as a Security Threat Group (STG) member.  (Doc. 1.)   The remaining Defendants—Director Ryan; STG Committee members Freeland, Mendoza, McCarville; and Appeals Officer Herman—move for summary judgment, which Plaintiff opposes.[1]  (Docs. 36, 39.)

The Court will grant the motion and terminate the action.

## I.    Background

Plaintiff alleges that the conditions of his confinement in the STG unit are atypical and, therefore, they require due process for placement and that his due process rights were violated during his STG validation proceedings because his validation was based

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), regarding the requirements of a response.  (Doc. 38.)

1    entirely on hearsay evidence lacking indicia of reliability.  (Doc. 1.)  Plaintiff alleges that

2    Defendant Ryan establishes STG validation policy for ADC, that Freeland, Mendoza, and

3    McCarville are responsible for validating him based on unreliable evidence, and that

4    Herman denied his appeal of the validation.  (*Id.*)

5    **II.    Motion for Summary Judgment**

6        **A.    Legal Standards**

7            **1.    Summary Judgment**

8        A court "shall grant summary judgment if the movant shows that there is no

9    genuine dispute as to any material fact and the movant is entitled to judgment as a matter

10   of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

11   (1986).    Under summary judgment practice, the moving party bears the initial

12   responsibility of presenting the basis for its motion and identifying those portions of the

13   record, together with affidavits, which it believes demonstrate the absence of a genuine

14   issue of material fact.  *Id.* at 323.  If the moving party meets its initial responsibility, the

15   burden then shifts to the opposing party who must demonstrate the existence of a factual

16   dispute and that the fact in contention is material, i.e., a fact that might affect the outcome

17   of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

18   (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

19   could return a verdict for the non-moving party.  *Id.* at 250; *Matsushita Elec. Indus. Co.,*

20   *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The opposing party need not

21   establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed

22   factual dispute be shown to require a jury or judge to resolve the parties' differing

23   versions of the truth at trial."  *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S.

24   253, 288-89 (1968).

25       When considering a summary judgment motion, the court examines the pleadings,

26   depositions, answers to interrogatories, and admissions on file, together with the

27   affidavits or declarations, if any.  *See* Fed. R. Civ. P. 56(c).  At summary judgment, the

28   judge's function is not to weigh the evidence and determine the truth but to determine

1   whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  The evidence of

2   the non-movant is "to be believed, and all justifiable inferences are to be drawn in his

3   favor."  *Id.* at 255.  But, if the evidence of the non-moving party is merely colorable or is

4   not significantly probative, summary judgment may be granted.   *Id.* at 248-49.

5   Conclusory allegations, unsupported by factual material, are insufficient to defeat a

6   motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  *See*

7   *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory,

8   speculative testimony in affidavits and moving papers is insufficient to raise genuine

9   issues of fact and defeat summary judgment").

10   ## 2.   Due Process and Maximum Custody

11   It is well-settled that placement in maximum security segregation units implicates

12   a liberty interest requiring due process protections.  *Wilkinson v. Austin*, 545 U.S. 209,

13   224 (2005).  An inmate may be deprived of his liberty interest as long as he is accorded

14   the proper procedural protections.  For the initial decision to place an inmate in maximum

15   custody, due process is generally satisfied by notice of the factual basis for the placement

16   and an opportunity to be heard, as these procedural mechanisms serve to avoid the risk of

17   erroneous deprivation.  *Id.* at 224-26; *Hewitt v. Helms*, 459 U.S. 460, 476 (1983),

18   *overruled in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

19   The validation as an STG member must be supported by some evidence in the

20   record.  *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003); *see also Cato v. Rushen*,

21   824 F.2d 703, 706 (9th Cir. 1987) (applying the "some evidence" standard of

22   *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).)  In *Hill*, the Supreme Court stated that

23   "the relevant question is whether there is any evidence in the record that could support

24   the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455-56.  When

25   examining the record, the court is not to make its own assessment of the credibility of

26   witnesses or reweigh the evidence.  *Id.* at 455.  But the evidence must have some indicia

27   of reliability.  *Cato*, 824 F.2d at 705 (9th Cir. 1987).

28

After an inmate is placed in maximum security segregation, he is entitled to "some sort" of periodic review of his status.  *See Hewitt*, 459 U.S. at 477, n. 9 ("administrative segregation may not be used as a pretext for indefinite confinement of an inmate.  Prison officials must engage in some sort of periodic review of the confinement of such inmates").  To determine whether the annual reviews afforded an STG-validated inmate conform to due process requirements, the Court must consider the *Mathews* factors.  *Wilkinson*, 545 U.S. at 224-25 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

**B.     Background Facts[2]**

**1.     ADC Process**

Plaintiff is serving a life sentence for First Degree Murder, in addition to two sentences for Assist. Criminal Syndicate/Lead Gang.  (DSOF ¶ 2.)

In 1991, ADC established an STG policy dedicated to controlling prison-gang activity in Arizona's prisons.  (*Id.* ¶ 4.)  An STG is any organization, club, association or group of individuals, including traditional prison gangs, whose members engage in unlawful acts or acts that would violate ADC policies.  (*Id.* ¶ 12.)  The STG policy is to minimize the threat that inmate-gang or gang-like activity poses to the safe, secure, and efficient operations of institutions and to decrease violence, intimidation, and harassment of other inmates.  (*Id.* ¶ 4-5.) The Policy provides for the identification and certification of prison gangs.  (*Id.* ¶ 7.)  ADC has certified nine STGs, including the Mexican Mafia (a.k.a. "New Mexican Mafia").  (*Id.* ¶ 19). The Policy also provides for the identification and validation of inmates involved with or who are members of an STG. (*Id.* ¶ 7.)

When an inmate is suspected of being an STG member, a Suspect File is initiated and compiled; the file typically contains an STG Worksheet and STG Identifying

---

[2] In support of their motion, Defendants submit their Statement of Fact (Doc. 37, Defs.' Statement of Facts (DSOF)), and exhibits, including the declarations of Jerry Dunn and George Herman (*id.*, Exs. B, C) and Plaintiff's ADC Validation packet (*id.*, Ex. D). Plaintiff submits his Statement of Facts (Doc. 39 (PSOF)), and exhibits, including the Herman declaration and grievance or appeal documents.

- 4 -

1    Questionnaire.  (*Id.* ¶ 31.)  When there is sufficient evidence to meet validation criteria, a
2    Validation Packet is prepared.  The Validation process is based on a point system, using
3    the Federal Bureau of Prisons point system.  (*Id.* ¶¶ 34-36.)

4            To validate an inmate requires ten points from two or more types of sources.  (*Id.*
5    ¶ 37.)  An STG Validation Committee evaluates the evidence and determines whether the
6    evidence supports validation. (*Id.* ¶ 39.)   The inmate is provided notification of the
7    hearing at least 10 days in advance, he chooses whether he will appear at the hearing and
8    whether he will request witnesses to respond to written questions.  (*Id.* ¶ 41.)

9            Validated inmates are reclassified to maximum custody. (*Id.* ¶ 50.)  Inmates may
10   become eligible for classification to a lower custody level—close custody—by either
11   renouncing membership in or affiliation with an STG and debriefing or participating in a
12   Step-Down Program, which requires inmates to complete specific programming, shun
13   gang activity and affiliation, and remain disciplinary free.  (*Id.* ¶ 52.)  Each year that an
14   inmate does not renounce and debrief, he receives an annual review of his placement; the
15   review consists of a determination of whether he has renounced his gang affiliation.  (*Id.*
16   ¶ 49.)

17           Although an inmate's confinement in Browning is reviewed only annually,
18   Defendants assert that Plaintiff can secure his release from administrative detention by
19   separating himself from the STG either through renunciation and debriefing or the step-
20   down process.  (*Id.* ¶ 52.)  Renunciation is the process by which a validated STG member
21   agrees to admit STG membership, renounces or disavows STG affiliation, successfully
22   completes a debriefing, and is considered to be a former STG member.  (*Id.* ¶¶ 54-54.)
23   Debriefing is the process in which an STG Unit staff member documents the claim of a
24   validated STG member that he is no longer a member of an STG.  (*Id.* ¶ 54.) The primary
25   objective of debriefing is to learn enough about the validated STG member and the STG
26   to convince ADC that the inmate has withdrawn from the STG; provide additional
27   information regarding the STG's structure, activity and membership that would adversely
28   impact the STG and assist in management of the STG population; and provide

information to determine if the inmate may require protection from other STG members. (*Id.* ¶ 55.)

The ADC's Step-Down Program began in March 2006 and was restarted in November 2009.  (*Id.* ¶¶ 65, 83.)  The Program provides validated STG members a way to leave Browning Unit without renouncing and debriefing; the inmate is given an opportunity to remove himself from STG activity and to demonstrate to the ADC that he is no longer involved in an STG.  (*Id.* ¶ 65.)  It does not require the inmate to admit to being an STG member or require the inmate to provide information about the STG that would adversely impact the STG, thereby eliminating an inmate's concern that debriefing could result in retaliation by the inmate's STG.  (*Id.*)

Plaintiff requested to participate in the Step-Down program in July 2012.  (*Id.* ¶ 116.) There is no record that he ever requested to renounce or debrief.  (*Id.* ¶ 115.)

### 2.    Plaintiff's Validation

Defendants assert that Plaintiff had notice of the categories of evidence against him, as well as the evidence itself, advance notice of the STG validation hearing, and had the opportunity to appear and call witnesses.  (*Id.*, Ex. C, Herman Decl.  ¶¶ 9-11.) Plaintiff elected not to present witnesses in his defense.  (*Id.* ¶ 11.)  Lieutenant Reyna presented the Validation Packet to the Committee, which included evidence in Categories G (Court Records), J (Contacts), and L (Membership Information) as well as the STG Identifying Questionnaire.   (DSOF ¶ 101.)  Court records and Membership Information (Categories G and L) carry 9 points each.  (*Id.* ¶ 37.)  Plaintiff was assessed twenty points from three sources.  (*Id.* ¶ 104.)

In his Complaint, Plaintiff also alleged that he could not "fairly" appeal his STG validation because the reasons found were "not included in the result documents."  (Doc. 1 at 10.)

///

///

///

- 6 -

1

**C.     Sufficiency of the Evidence[3]**

2     The Court finds that Plaintiff creates no triable issue of fact regarding the

3  adequacy of the evidence used to validate him as an STG member.

4     Reliability of evidence can be established by:

5

> (1) the oath of the investigating officer appearing before the
> committee as to the truth of his report that contains
> confidential information, (2) corroborating testimony, (3) a
> statement on the record by the chairman of the committee that
> he had firsthand knowledge of sources of information and
> considered them reliable based on the informant's past record,
> or (4) an in camera review of the documentation from which
> credibility was assessed.

6

7

8

9

10  *Zimmerlee v. Keeney*, 831 F.2d 183, 186-87 (9th Cir. 1987).  In *Zimmerlee*, the court

11  upheld a disciplinary committee's finding of guilt based on an unidentified informant's

12  eyewitness account; the committee had a state police report of the investigation, the

13  informant's polygraph, a memorandum from a prison official with the informant's

14  verbatim statement, and evidence of prior instances of the informant's reliable

15  information. *Id.* at 187.

16     Although most of the Memorandum presented to the STG Validation Committee

17  is not included with Defendants' exhibits and many exhibits are heavily redacted, the

18  Court finds there is sufficient evidence submitted for review to determine that the "some

19  evidence" standard was met in Plaintiff's validation process.  (*See* e.g., Doc. 37, Ex. D

20  Bates 0004 (Doc. 37-4 at 14).)  Defendants argue that Lt. Reyna's Memorandum and

21  Validation Packet themselves are a record that (i) sets out the Special Security Unit

22  (SSU's) activities, and involves (ii) a matter observed while under a legal duty to report;

23  or (iii) factual findings from a legally authorized investigation and are admissible

24

25

26  [3] PSOF, which contains legal argument, does not address the sufficiency of the evidence.
27  Rather, Plaintiff argues that the periodic review and Step-Down Program do not comport
    with due process.  (Doc. 39.)  The Court finds that this latter issue is beyond the scope of
28  the Complaint, but because both parties brief the issue, the Court will address it.  (Doc. 1,
    Doc. 3 (Screening Order).)

1   hearsay. (Doc. 36 at 6, citing Fed. R. Evid. 803.) They assert that Lt. Reyna and the SSU

2   are responsible for investigating STG suspects and are legally obligated to report. (*Id.*)

3       Here, it is undisputed that Plaintiff was convicted of two criminal syndicate

4   felonies; these are public records.  Defendants argue that Plaintiff's history with

5   organized crime stands on its own, requiring no support from the presentencing report.

6   Presumably the convictions were pursuant to Ariz. Rev. Stat. § 13-2308, Participating in

7   or assisting a criminal syndicate; classification.  But because Defendants do not submit

8   the indictment and plea and the Court is unable to otherwise locate it, the Court will not

9   consider these convictions as evidence of gang activity.

10      The Validation Packet refers to a review of court documents and the presentence

11  report is included in the packet.  (DSOF, Herman Decl., Ex. D, Bates 0004.)  The Court

12  finds that the presentence report is reliable and corroborates gang membership.  *See*

13  *United States v. Romero-Rendon*, 220 F.3d 1159, 1161-62 (9th Cir. 2000) (generally

14  presentence reports are sufficiently reliable to establish the nature of an underlying

15  conviction for purposes of sentence enhancement).  Plaintiff's Probation Department

16  Report states, for example, that the Phoenix Police Department Gang Enforcement Unit

17  was investigating activities of the New Mexican Mafia and refers to someone's

18  conversation with Plaintiff about a hit and that Plaintiff tried to set up a three-way call to

19  further a plot.  (DSOF, Ex. D, Bates 0028-0032.)  The Presentence Recommendation

20  refers to Plaintiff's membership in a criminal street gang.  (*Id.*, Bates 0033.)

21      In addition, the Validation Packet contains items that Defendants describe as

22  membership lists with the names of inmates identified as members of the Mexican Mafia.

23  Plaintiff challenges the lists as hearsay without any indicia of reliability.  Citing *Lira v.*

24  *Cate*, 2010 WL 727979 (N.D. Cal. 2010), he argues that so-called "laundry lists" of STG

25  membership are ineligible for validation purposes.  (Doc. 1 at 8.)  Defendants argue that

26  Lt. Reyna and the Committee corroborated the two separate STG membership lists with

27  other documentation—including court records, his presentence report, his two felony

28  convictions, and a letter to Plaintiff.   (DSOF ¶ 102.)

The reported decision in *Lira* addresses only attorneys' fees and merely states that the court had found that the inmate's due process rights were violated because the evidence used to validate him lacked indicia of reliability; the decision does not state what that evidence was.  *Lira*, 2010 WL 727979, at *2.  In *Escalante v. Lewis*, however, the district court discussed *Lira* stating that in *Lira*, that court concluded that the plaintiff's inclusion on a "laundry list" of gang members given by an informant to a correctional officer as part of debriefing did not meet the *Hill* standard because there was no attempt to corroborate this information and no way to determine when such lists were compiled or by whom, as such lists are passed around within the prison system from gang member to gang member.  *Escalante*, 2012 WL 215253, at *2 (N.D. Cal. Jan. 24, 2012).  But in *Escalante*, the district court found such a membership list to be reliable evidence because it could "reasonably be inferred from the circumstances surrounding the seizure of the document that it was prepared secretly and for use by gang affiliates," not for prison officials.  In other words, the membership list was not prepared by a confidential informant to give to a prison official.

In Plaintiff's case, a November 16, 2009 Memorandum states that the SSU conducted a search of an unidentified inmate's property and found a list containing names, numbers and monikers of Mexican American inmates; the SSU identified the list as a membership list.  (DSOF, Herman Decl., Ex. D, Bates 0050.)  This Memorandum and list was part of Plaintiff's Validation Packet.  Defendants argue that STG lists do not have a title with the name of a gang underlined at the top, nor do STG members write lists of fellow gang members and then admit that the lists are membership lists. (Doc. 36 at 7-8.)  They point out that Plaintiff offers no alternative explanation as to why his name appeared alongside other (New) Mexican Mafia validated members.  The Court finds that given the circumstances regarding seizure of the document, the membership-list documentation was reliable and properly considered by the Committee.

The record here is far more complete and reliable than the record in *Cato*, on which Plaintiff relies.  In *Cato*, the Ninth Circuit Court of Appeals observed that the only

evidence implicating inmate Cato was another inmate's statement that was given to prison officials through a confidential informant who had no first-hand knowledge of any relevant statements or actions by Cato; in addition, the polygraph test of the inmate who made the statement was inconclusive.  The court found this uncorrobotated hearsay insufficient to meet the *Hill* standard.  *Id.*  The some evidence rule does not preclude the use of hearsay; it requires only that evidence be reliable, which can mean that it is corroborated by other evidence in the record.  Here, a probation report documents gang activity and at least one membership list shows Plaintiff's membership in a gang.

Thus the Court finds that the Validation Packet contains at least two reliable items supporting Plaintiff's validation as an STG member and because these items are from two different categories, each carrying nine points, Plaintiff's validation does not constitute a due process violation.

As to Plaintiff ability to appeal the validation, the record shows that Plaintiff signed for a notice on June 17, 2010, "Result of STG Validation Hearing."  (Doc. 36, Bates 0068 (Doc. 37-5 at 33).)  It noted the Committee's reliance on court records and the SSU Memorandum. He submitted an appeal on June 23, 2010.  (Doc. 39 at 26.)  The Committee's Memorandum sets out the basis of Plaintiff's appeal and notes that he appealed the items in categories "court records," "contacts," and "membership."  (Doc. 37, Bates 0071 (Doc. 37-5 at 36).)  These are the three categories of information on which Defendants relied for validation. Plaintiff does not explain why he was unable to appeal an issue and so creates no triable issue of fact as to due process in the appeal.

**D.   Periodic Review**

The Court finds that Plaintiff creates no triable issue of fact regarding the adequacy of the STG periodic review.

The reason for an inmate's retention in administrative segregation must be reviewed periodically.  *Hewitt*, 459 U.S. at 477 n. 9.  In *Wilkinson*, the Supreme Court evaluated the due process required to place inmates in the Ohio supermax prison for an indefinite period and the placement was reviewed at least annually.  545 U.S. at 215-16.

1    In *Hernandez v. Schriro*, the Ninth Circuit found that annual reviews of STG inmates

2    housed in the same facility as Plaintiff are insufficient.  357 Fed. App'x 747, 749 (9th Cir

3    2009) (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1101 (9th Cir. 1986)).   But on

4    remand in *Hernandez*, the district court found that annual reviews combined with the

5    option to renounce and debrief at any time satisfy due process.  2011 WL 2910710, at *8

6    (D. Ariz. July 20, 2011).

7        As noted, the annual review consists of determining whether the inmate has

8    renounced.  Plaintiff argues that asking him if he is "still" an STG member results in self-

9    incrimination because it implies an admission.  (Doc. 39 at 2.)  But this creates no due

10   process claim because Plaintiff is not entitled to periodic appeals of his validation.  *See*

11   *Hewitt*, 459 at 477, n. 9 (the requisite periodic reviews "will not necessarily require that

12   prison officials permit submission of any additional evidence or statements" as to the

13   initial decision).  Plaintiff also argues that because inmates who debrief are targeted for

14   execution by other gang members and so ADC places inmates who debrief into protective

15   custody in an identically restrictive facility, he will remain confined indefinitely.  (Doc.

16   39 at 3.)  But Plaintiff's hypothetical conditions of confinement in protective custody are

17   well beyond the scope of the Complaint, and there is no evidence in the record as to those

18   conditions.  Finally, Plaintiff complains about the terms of participation in the Step-Down

19   program.  (*Id.* at 4-5.)  But there is no evidence regarding Plaintiff's request to participate

20   in the program, so Plaintiff creates no due process issue regarding his Step-Down

21   application.

22       To determine whether the periodic review afforded Plaintiff conforms to due

23   process requirements, this Court must consider "(1) the private interest that will be

24   affected by the official action; (2) the risk of an erroneous deprivation of such interest

25   through the procedures used, and the probable value, if any, of additional or substitute

26   procedural safeguards; and (3) the Government's interest, including the function involved

27   and the fiscal and administrative burdens that the additional or substitute procedural

28

1    requirement would entail."   *See Wilkinson,* 545 U.S. at 225; *see also Mathews v.*
2    *Eldridge*, 424 U.S. 319 (1976).

3          As to the first prong of *Mathews*, a prisoner's private interest in remaining free of
4    supermax incarceration is not comparable to "the right to be free from confinement at
5    all"; the inmate's interest must be evaluated "within the context of the prison system and
6    its attendant curtailment of liberties."   *Wilkinson*, 545 U.S. at 225. Although the
7    differences between Plaintiff's conditions of confinement and those of other prisoners
8    may be substantial or even "atypical and significant," they are less marked and hence
9    require less "process than an initial criminal conviction."   *Id.*

10         Considering the second prong of *Mathews*, the Court holds that Plaintiff has not
11   demonstrated that the procedures provided have a significant risk of error and thus
12   possibly require added safeguards.   The annual review determining whether an inmate
13   has renounced and debriefed is an objective factual one; additional procedures would not
14   provide safeguards against an erroneous determination.   And the Court holds that prison
15   officials need not evaluate whether Plaintiff poses an immediate threat to safety; as with
16   the initial validation, continued membership in an STG is a sufficient ground for
17   retention.   Moreover, it appears that renunciation and debriefing are available to all
18   validated inmates at any time.   It is undisputed that Plaintiff has not asked to renounce
19   and debrief; therefore, he points to no specific errors in his renouncing and debriefing
20   process.   Thus, there is no evidence of a risk of an erroneous result in that process.

21         Regarding the third *Mathews* factor, the Supreme Court has stated that in the
22   context of prison management and the dangers posed by inmates who are, for example,
23   gang members, the State's interest "is a dominant consideration."   *Id.* at 227.   Defendants
24   have an obligation to "ensure the safety of guards and prison personnel, the public, and
25   the prisoners themselves," while allocating limited resources and addressing   prison
26   gangs, "who seek nothing less than to control prison life and extend their power outside
27   prison walls."   *Id.*   "It is clear . . . that prisons have a legitimate penological interest in
28   stopping prison gang activity."   *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Balancing the factors—the private interest, the risk of an erroneous deprivation, and the Government's interest—the Court finds that Plaintiff has failed to show that the process afforded to him in the annual review is inadequate.  Because Plaintiff can exit the Browning Unit only by ceasing to be an STG member, either through renouncing and debriefing or Step-Down, and he can do this at any time, annual reviews are sufficient to minimize the risk of improper indefinite confinement. There is no evidence that Plaintiff asked to renounce, and there is no evidence regarding his request for step-down, so there is no due process claim as to either.  Accordingly, Defendants are entitled to judgment as a matter of law as to Plaintiff's due process claim regarding continued confinement in the Browning Unit.

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 36) and Plaintiff's Motion for Ruling (Doc. 43).

(2)    Plaintiff's Motion for Ruling (Doc. 43) is **granted**.

(3)    Defendant's Motion for Summary Judgment (Doc. 36) is **granted**.  The action is dismissed with prejudice, and the Clerk of Court must enter judgment accordingly.

DATED this 4th day of December, 2013.

_____
Robert C. Broomfield
Senior United States District Judge